UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KEITH MATTHEW MINKOSKY,

    Plaintiff,

    v.                                    CAUSE NO. 1:22-CV-300-HAB-SLC

DAVID J. GLADIEUX,

    Defendant.

OPINION AND ORDER

Keith Matthew Minkosky, a prisoner without a lawyer, filed a complaint against Allen County Sheriff David Gladieux seeking damages for being held in the unconstitutional conditions of confinement at the Allen County Jail identified in *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098 (N.D. Ind. Mar. 31, 2022). ECF 1. The court determined the complaint did not state a claim because Minkosky did not allege how he was personally injured by the conditions. ECF 6. Minkosky has now filed an amended complaint about several different aspects of his confinement. ECF 11. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Minksoky alleges he was a pre-trial detainee while at the Allen County Jail, and therefore his rights arise under the Fourteenth Amendment.[1] *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (citation omitted). To state a claim that a jail policy violates the Fourteenth Amendment, a plaintiff must allege that a resulting pretrial condition "is 'imposed for the purpose of punishment,' or . . . the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless . . ..'" *Id.* at 856 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). Courts consider whether "the challenged governmental action is not rationally related to a legitimate governmental objective or [whether] it is excessive in relation to that purpose." *Id.* (quoting *Kingsley*, 576 U.S. at 398).

Overcrowding, on its own, does not state a constitutional claim, and instead the court must look to the effects the overcrowding has on the conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 541 (1979) ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine

---

[1] A review of state court records reveals that as a result of the arrest for the charges he is currently awaiting trial on, his probation in another case was revoked and he was ordered to serve 90 days in the Allen County Jail. *See State v. Minkosky*, No. 02D04-2011-CM-3895 (Allen Super. Ct. decided Apr. 28, 2021). It is possible, therefore, that the Eighth Amendment, rather than the Fourteenth Amendment, applies at certain times of Minkosky's confinement. *See Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019) (distinguishing between constitutional protections that apply to pretrial detainees and convicted prisoners). However, without more information about Minkosky's status while he was at the Allen County Jail, the court proceeds under a Fourteenth Amendment analysis.

privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment, nothing even approaching such hardship is shown by this record."); *see also Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008) (after determining that the triple-celling of pretrial detainees was rationally related to managing an overcrowded facility, the court turned to "whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them" (quotation marks omitted)). For example, overcrowding could lead to deprivations of essential food, medical care, or sanitation, cause an increase in violence, or result in other intolerable prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

Minkosky's amended complaint plausibly alleges that as a result of the overcrowding, he was subjected to unconstitutional conditions of confinement that injured him. For example, Minkosky alleges that he entered the jail on April 20, 2021, but did not receive any recreation time for more than a year, until May 3, 2022. ECF 7 at 2. His block was small and overcrowded, which meant that he was unable to move around enough during that time. *Id.* As a result, he suffered extreme mental fatigue and his muscles atrophied. *Id.* Minkosky plausibly alleges that spending more than a year in overcrowded conditions, coupled with the lack of recreation, could amount to punishment. *Cf. James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017) ("Our decisions are clear that preventing inmates from exercising for prolonged periods may violate the Eighth Amendment."); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) ("An adverse

3

condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem.").

Similarly, Minkosky alleges that because of the overcrowding, he was forced to sleep on the floor many times in the first year of his detention. ECF 7 at 3. Sleeping on the floor is not, by itself, a constitutional violation. *See, e.g., Rodmaker v. Krienhop*, No. 4:14-cv-070-TWP-TAB, 2014 U.S. Dist. LEXIS 100067 at *6 (S.D. Ind. July 23, 2014) (collecting cases) (pretrial detainees have no constitutional right to have an elevated bed and may be required to sleep with their mattress on the floor); *Robeson v. Squadrito*, 57 F. Supp. 2d 645, 647 (N.D. Ind. 1999) (same). But Minkosky alleges that those who slept on the floor did so in the dayroom, where the lights remained on 24 hours a day. ECF 7 at 3-4. Here, Minkosky plausibly alleges that he was prevented from obtaining adequate sleep for a long period of time with the combination of 24-hour lighting and overcrowded inmates sleeping on the floor.

Minkosky further alleges that federal and nonfederal inmates as well as convicted and nonconvicted inmates were mixed in the jail population, and he was attacked three times—two of which were by convicted inmates. ECF 7 at 4. The constitution does not prohibit mixing these types of inmates. However, construing the complaint broadly, Minkosky plausibly alleges that the overcrowding prevented proper classification of inmates, and as a result he was exposed to an increased risk of violence from inmates who should not have been housed with him. *See Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (noting substantial risk of harm can be found based on "risks

4

attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals" or based on certain characteristics of the victim).

Minkosky also alleges that because of the overcrowding, there are not enough toilets to accommodate all the inmates, and the jail overall became filthy and inhumane, denying him "reasonably adequate" sanitation. *See Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (detainees are entitled to "reasonably adequate" sanitation and their allegation that they were forced to live "surrounded by their own and others' excrement" for several days stated Fourteenth Amendment claim).

Minkosky's complaints about the food and the frequent lockdowns, however, do not add to his Fourteenth Amendment claim. He complains that the food is often served cold from being left in the hallways for hours and that he does not receive fresh fruit. ECF 4-5. However, he does not allege that the food, though unappetizing and without fresh fruit, is overall nutritionally inadequate or otherwise unsafe to eat. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (pretrial detainees entitled to "nutritionally adequate food"). Similarly, the lockdowns due to understaffing do not violate due process beyond the extent to which they contribute to the lack of recreation discussed above. Although lockdowns cannot be used as punishment for a disciplinary infraction without giving the inmate notice and an opportunity to be heard, the lockdowns here were not imposed for punishment but rather done for administrative purposes in response to the understaffing. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary

5

infraction without notice and an opportunity to be heard; . . . [b]ut no process is required if he is placed in segregation not as punishment but for managerial reasons.").

Finally, Minkosky complains about limitations on his ability to practice his religion at the jail. Inmates retain their right under the First Amendment to practice their religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). However, a prison practice that imposes a substantial burden on the free exercise of religion "may be justified if it is reasonably related to legitimate penological interests." *Kaufman*, 733 F.3d at 696 (internal quotation marks and citation omitted). The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Here, Minkosky alleges that chapel was not offered until May 3, 2022, and until that time he was not allowed to attend church or have regular access to a chaplain. It can be reasonably inferred that the lack of religious services was a policy or practice at the jail, and therefore, Minkosky may proceed on claims under the First Amendment and RLUIPA against Sheriff Gladiuex in his official capacity for not providing religious services at the jail. He complains that the number of spaces available to attend church is

6

now limited to 30 people, but he does not allege that he is currently being denied the ability to attend, and therefore there is no basis to allow an injunctive-relief claim to proceed.

For these reasons, the court:

(1) GRANTS Keith Matthew Minkosky leave to proceed against Sheriff David J. Gladieux in his official capacity for compensatory and punitive damages for a policy or practice of housing him in overcrowded conditions for more than a year, starting on April 20, 2021, that resulted in inadequate recreation, sleep, classification of inmates, and sanitation in violation of the Fourteenth Amendment;

(2) GRANTS Keith Matthew Minkosky leave to proceed against Sheriff David Gladieux in his individual capacity for compensatory and punitive damages for denying him the ability to practice his religion from April 20, 2021, through May 3, 2022, in violation of the First Amendment and RLUIPA;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) David J. Gladieux at the Allen County Jail, with a copy of this order and the complaint (ECF 7);

(5) ORDERS the Allen County Jail to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), David J. Gladieux to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 30, 2023.

s/Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT