UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KEITH MATTHEW MINKOSKY, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:22-cv-00300-SLC |
| DAVID J. GLADIEUX, *Sheriff*, | |
| Defendant. | |

**OPINION AND ORDER**

Keith Matthew Minkosky, a prisoner without a lawyer, is proceeding in this case on two claims against Sheriff David J. Gladieux in his official capacity: (1) "for a policy or practice of housing him in overcrowded conditions for more than a year, starting on April 20, 2021, that resulted in inadequate recreation, sleep, classification of inmates, and sanitation in violation of the Fourteenth Amendment"; and (2) "for denying him the ability to practice his religion from April 20, 2021, through May 3, 2022, in violation of the First Amendment and [the Religious Land Use and Institutionalized Persons Act (RLUIPA).]"[1] (ECF 9 at 7). Minkosky filed a motion for summary judgment, together with a supporting brief and a statement of material facts. (ECF 67-69). Sheriff Gladieux filed a response brief, supporting evidence, and a response to Minkosky's statement of material facts (ECF 76-78), and Minkosky filed reply briefs and a response to Sheriff

---

[1] In its conclusion, the screening Order granted Minkosky leave to proceed on these religion claims against Sheriff Gladieux in his individual capacity, even though the body of the Order analyzed these claims as an official capacity claim. (*See* ECF 9 at 7). This appears to have been a clerical mistake. *See* Fed. R. Civ. P. 60(a). The Court clarifies that these claims are against Sheriff Gladieux in his official capacity.

Gladieux's statement of material facts (ECF 96-98). Minkosky's summary judgment motion is now fully briefed and ripe for ruling.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The Court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (collecting cases). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the Court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. "Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these

elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

I. *Overcrowded conditions claim*

In this case, Minkosky is a member of the class in *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098, at *1 (N.D. Ind. Mar. 31, 2022), defined as "all persons currently confined, or who would in the future be confined, in the Allen County Jail." That class action was certified under Federal Rule of Civil Procedure 23(b)(2) for injunctive and declaratory relief, and the Court found at summary judgment that certain conditions of confinement at the jail violated the Eighth and Fourteenth Amendments to the Constitution: "The overcrowding problem at the jail—which in turn has spawned an increased risk of violence, unsanitary and dangerous conditions in cells, insufficient recreation, and classification difficulties—has deprived this class of inmates 'the minimal civilized measure of life's necessities.'" *Id.* at *1, *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

By virtue of Minkosky's membership in this class, liability is undisputed. *See Williams v. Lane*, 129 F.R.D. 636, 643-49 (N.D. Ill. 1990) (reviewing caselaw and concluding a class action limited to declaratory and injunctive relief may provide the basis for liability on damages claims, though the amount of damages incurred must be individually determined); *see also Crowder v. Lash*, 687 F.2d 996, 1011 (7th Cir. 1982)

3

(concluding a *pro se* plaintiff bringing a damages action should not be prevented from using collateral estoppel to bar defendants from relitigating findings from a class action regarding the unconstitutionality of the conditions in the unit where the plaintiff was confined, but noting that the class action findings "will not automatically establish defendant's liability for damages here"). What is left for Minkosky to prove is that he suffered damages as a result of the unconstitutional conditions. This means he must show more than he suffered an injury. He must connect that injury to the unconstitutional conditions identified in *Morris* or provide another basis for liability. Because this is a claim against Sheriff Gladieux in his official capacity, Minkosky must prove that he was injured and the unconstitutional overcrowding was the "moving force" behind his injuries. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235-36 (7th Cir. 2021) ("[A] *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation."); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

At the outset, because Minkosky alleged in his complaint that he was a pretrial detainee at the Allen County Jail at the time of the incidents described in his complaint, the Court screened his claims under the Fourteenth Amendment rather than the Eighth Amendment. (ECF 9 at 2). But the Court noted that Minkosky also was confined in the Allen County Jail because his probation had been revoked in a different case, meaning it was possible the Eighth Amendment applied at certain times of his confinement. (*See id.* at n.1); *see also Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019) (distinguishing

between constitutional protections that apply to pretrial detainees and convicted prisoners). Sheriff Gladieux now provides evidence that while Minkosky was originally arrested for charges of domestic battery, strangulation, and intimidation, he was also arrested for a home detention violation for a previous domestic battery conviction.[2] (ECF 76-1 at 16-19). Minkosky does not dispute this evidence and concedes his claims should be analyzed under both the Eighth Amendment and the Fourteenth Amendment. (ECF 97 at 4). The distinction is not material here because in *Morris*, the court found that the conditions violated both the Fourteenth and the Eighth Amendments. *See Morris*, 2022 WL 971098, at *5. Under both standards, the Sheriff must provide Minkosky with "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted) (Eighth Amendment); *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (citation omitted) (Fourteenth Amendment). And to recover from Sheriff Gladieux in his official capacity, Minkosky must satisfy the *Monell* standard discussed above.

Overcrowding, on its own, does not state a constitutional claim, and instead the Court must look to the effects the overcrowding has on the conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 542 (1979) ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment,

---

[2] Public records reflect that Minkosky was sentenced on the violation of probation on April 19, 2022. *See State v. Minkosky*, No. 02D05-1605-F6-000609 (Allen Super. Ct. filed May 26, 2016).

5

nothing even approaching such hardship is shown by this record." (footnote omitted)). For example, overcrowding could lead to deprivations of essential food, medical care, or sanitation, cause an increase in violence, or result in other intolerable prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Minkosky is proceeding against Sheriff Gladieux for housing him in overcrowded conditions that "resulted in inadequate recreation, sleep, classification of inmates, and sanitation." (ECF 9 at 7). Each subclaim will be addressed in turn.

    i.    *Inadequate recreation*

Minkosky argues summary judgment is warranted in his favor because he was "never given any opportunity to exercise" while in the Allen County Jail. (ECF 69 at 3; *see also* 68 at 2). "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (citations omitted). However, Sheriff Gladieux argues summary judgment is not warranted on this basis because Minkosky has not provided sufficient evidence that the overcrowding prevented him from receiving adequate recreation to the point of injury.

Sheriff Gladieux provides an affidavit from the Jail Commander at the Allen County Jail, who attests to the following facts: Minkosky arrived at the Allen County Jail on April 20, 2021. (ECF 76-1 at 1). Between May 4, 2021, through May 9, 2021, Minkosky was held in cell block 6b for quarantine purposes to ensure he was not a carrier of COVID-19. (*Id.* at 2). On May 9, 2021, Minkosky was transferred to H Block, where he remained until June 8, 2021. (*Id.*). Inmates in H Block were provided between

6

two and four hours out of their cell per day to access the cell block common area, where they were able to exercise. (*Id.* at 2-3). On June 8, 2021, Minkosky was transferred to U Block, where he remained until May 2, 2022. (*Id.* at 2). U Block consisted of open dormitory housing and inmates there were given unfettered access to the cell block's common room, where they were able to exercise. (*Id.* at 2-3). On May 2, 2022, Minkosky was transferred to cell block 6A, where he stayed throughout the remainder of his incarceration in the Allen County Jail. (*Id.* at 2). Inmates in cell block 6A were given access to their cell block common areas for approximately twelve hours per day, where they were able to exercise. (*Id.* at 3). Inmates in cell block 6A, cell block 6B, and U block were provided the opportunity for recreation in the jail's recreation area three times per week following the cessation of COVID-19 protocols. (*Id.*).

Here, a reasonable jury could credit the Jail Commander's attestations and conclude that Minkosky's movement was not denied to the point his health was threatened and therefore was not injured by the effects the overcrowding had on his ability to exercise. Because disputed material facts exist regarding whether Minkosky was injured by a lack of exercise, summary judgment must be denied on this sub-claim.

    ii.    *Inadequate sleep*

Minkosky argues summary judgment is warranted in his favor because he was unreasonably denied adequate sleep in the Allen County Jail, as he was exposed to twenty-four hour lightning and overcrowded inmates sleeping on the floor. (ECF 68 at 3; ECF 69 at 3-4).

In response, Sheriff Gladieux provides Minkosky's medical records, which show the following facts: In April 2021, Minkosky was having issues sleeping because he had "racing thoughts" and "cannot get his mind to shut off/relax." (ECF 76-1 at 45). Minkosky's mental health provider found "no concerns" with his sleep hygiene and recorded he utilized "regular bedding/mat." (*Id.* at 47-48). Throughout Minkosky's medical records, no reference is made to his sleeping arrangements causing any issue and there were no concerns regarding his sleep hygiene. (*Id.* at 53, 56, 59).

Here, Sheriff Gladieux has provided evidence documented by Minkosky's medical providers, indicating that he had no issue with his sleep hygiene and that he slept with "regular bedding/mat." (*Id.* at 47-48). A reasonable jury could credit this evidence and conclude that Minkosky's sleep was not impacted by the overcrowding to the point where he suffered a constitutional injury. *See Antonelli*, 81 F.3d at 1433 (requiring sleep disruption to be severe and ongoing in order to violate the Constitution). Therefore, because the record contains disputed material facts regarding whether Minkosky's sleep was affected by the overcrowded conditions to the point of injury, summary judgment must be denied on this sub-claim.

    iii.    *Classification of inmates*

Minkosky argues summary judgment is warranted in his favor because he was housed with dangerous inmates due to the overcrowded conditions in the prison which caused him to be assaulted on at least three occasions. (ECF 68 at 3; ECF 69 at 4). The Fourteenth and the Eighth Amendments place a duty on jail and prison officials to keep inmates reasonably safe from substantial risks to their safety. *Farmer*, 511 U.S. at 837;

*Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022). To link the assaults he experienced to classification problems from overcrowding, Minkosky would have to show the "jail's security classification policy systematically fails to address obvious risks to inmate safety[,]" and that the assaults on him were conducted by a person who presented such a risk to him. *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 189 (7th Cir. 2013). Sheriff Gladieux argues summary judgment must be denied because Minkosky has not provided any evidence by which the Court can evaluate his claim, such as sufficient identifying information of the individuals who assaulted him, whether any confinement officer had any knowledge of a threat or risk of harm, or any evidence that any alleged assault had anything to do with the overpopulation of Allen County Jail. (ECF 77 at 9-11).

Here, there's insufficient evidence in the record to allow an irrefutable conclusion that Minkosky was injured by classification problems due to overcrowding at the Allen County Jail. Specifically, Minkosky's mere assertion he was assaulted on three occasions does not show that the inmates who assaulted him posed a risk to him that would have been remedied by a different classification system. Therefore, summary judgment must be denied on this sub-claim.

    iv.    *Inadequate sanitation*

Minkosky argues summary judgment is warranted in his favor because he was denied cleaning materials to maintain a safe and healthy living environment while in the Allen County Jail. (ECF 68 at 3-4; ECF 69 at 5). In response, Sheriff Gladieux provides an attestation from the Jail Commander that inmates at the Allen County Jail

9

are tasked with maintaining their own cells and living areas in a safe and sanitary condition and are provided with necessary cleaning supplies upon request on a daily basis. (ECF 76-1 at 3). Additionally, the Jail Commander attests the Allen County Jail offers an inmate block trustee program where inmates are given time credit and other benefits in exchange for assisting with cleaning the jail's common areas. (*Id.*).

Here, a reasonable jury could credit the Jail Commander's attestations and conclude that the overcrowding did not prevent Minkosky from cleaning his own personal area. Specifically, a reasonable jury could credit the Jail Commander's attestations that Minkosky was tasked with cleaning his own cell and had daily access to cleaning supplies and was therefore not injured by the effect the overcrowding had on the jail's sanitation. Thus, because the record contains disputed material facts regarding whether Minkosky was injured as a result of inadequate sanitation, summary judgment must be denied on this sub-claim.

## II.     *First Amendment and RLUIPA claim*

Minkosky is proceeding against Sheriff Gladieux in his official capacity "for denying him the ability to practice his religion from April 20, 2021, through May 3, 2022, in violation of the First Amendment and RLUIPA[.]" (ECF 9 at 7). The *Morris* class action did not make any findings regarding access to religion, so Minkosky does not get the benefit of any findings from that case when proceeding on these claims.

Inmates retain their right under the First Amendment to practice their religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious

10

belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (citation and internal quotation marks omitted). However, a prison practice that imposes a substantial burden on the free exercise of religion "may be justified if it is reasonably related to legitimate penological interests." *Id.* (citation and internal quotation marks and citation omitted). The RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Minkosky argues summary judgment is warranted in his favor because he was "completely denied any meaningful opportunity nor any type of religious services to practice the free exercise of his religion of choice" during his incarceration in the Allen County Jail. (ECF 69 at 5; *see also* ECF 68 at 4-5).

The Jail Commander attests to the following facts: Inmates at the Allen County Jail have access to religious reading materials on their individual computer tablets and have the ability to request any further religious reading materials from the jail's chaplaincy program. (ECF 76-1 at 4). Moreover, inmates are provided with the opportunity to meet and correspond with religious practitioners of their choice, either via their tablets or in person, and are entitled to utilize religious diets. (*Id.*). Group worship services were temporarily halted during the COVID-19 pandemic in response to recommendations from governmental entities, but are now once again offered at the Allen County Jail. (*Id.*).

Here, a reasonable jury could credit the Jail Commander's attestations that Minkosky had access to religious reading materials on his tablet, could request further religious reading materials from the jail's chaplaincy program, could meet and correspond with religious practitioners of his choice, and could utilize a religious diet and conclude that Sheriff Gladieux did not impose a "substantial burden" on Minkosky's religious practice within the meaning of the First Amendment or RLUIPA. Moreover, a reasonable jury could conclude that the jail's conduct of temporarily halting group worship services during the COVID-19 pandemic was reasonably related to a legitimate penological interest and was the least restrictive means of serving a compelling governmental interest to limit the spread of the COVID-19 virus through the jail facility. Because disputed material facts exist regarding whether Sheriff Gladieux violated Minkosky's rights under the First Amendment or RLUIPA, summary judgment must be denied on this claim.

For these reasons, the Court:

(1) DENIES Keith Matthew Minkosky's motion for summary judgment (ECF 67); and

(2) CLARIFIES Keith Matthew Minkosky is proceeding on the following claims:

 (a) against Sheriff David J. Gladieux in his official capacity for monetary damages for a policy or practice of housing him in overcrowded conditions for more than a year, starting on April 20, 2021, that resulted in inadequate recreation, sleep, classification of inmates, and sanitation in violation of the Fourteenth Amendment; and

(b) against Sheriff David Gladieux in his official capacity for monetary damages for denying him the ability to practice his religion from April 20, 2021, through May 3, 2022, in violation of the First Amendment and RLUIPA.

SO ORDERED.

Entered this 11th day of March 2025.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge